IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 AUG 17 A 10: 22
CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

| | | |
|---|---|---|
| TEHRON GEORGE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GJH-16-1353 |
| MARY LOU MCDONOUGH, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Tehron George, an inmate at the Central Maryland Correctional Facility, brings this *pro se* 42 U.S.C. § 1983 claim against Defendants Warden Mary Lou McDonough, Dr. Mercedes Hernandez and Law Librarian B. McTernan for denying him access to the law library at Prince George's County Detention Center ("PGCDC"), denying him access to the grievance process, and placing him in an unclean cell after George went on a hunger strike. ECF No. 1. Defendants McDonough and McTernan have filed a Motion to Dismiss or alternatively for Summary Judgment. ECF No. 12. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted, and the claims against McDonough and McTiernan are dismissed. Plaintiff shall be given the opportunity to amend his complaint against Defendant Hernandez.

## I. BACKGROUND

Plaintiff George is currently an inmate at the Central Maryland Correctional Facility in Sykesville, Maryland, where he has resided since at least October 2016.[1] While previously housed at PGCDC as a pre-trial detainee from July 2015 to August 2015 and from January 2016 to June 2016, George filed a self-represented civil rights complaint under 42 U.S.C. § 1983, seeking money damages against PGCDC Warden Mary Lou McDonough, Dr. Mercedes Hernandez, and Law Librarian B. McTernan. ECF No. 1. George states that during his first stay at PGCDC, on July 1, 2015, he was banned from using the library. *Id.* at 4. When George returned to PGCDC in January of 2016, the ban allegedly remained in effect. *Id.* George states that after his return, McTernan failed to provide copies of case law at his request, sending him "what she wants, sometimes nothing at all." *Id.* George further alleges that he was denied a grievance form until he began a hunger strike; and after initiating the hunger strike, George was stripped of his clothing and possessions, including his water cup, and placed in a dirty cell. *Id.* As a result, George was allegedly unable to drink water and could not participate in programs or work release. *Id.*

### A. Access to Library

In support of his claim, George provides copies of his case law requests and responses from library personnel relating to his most recent contacts with library personnel. ECF No. 14-1. On February 8, 2016, library staff informed George that the "definitions you have asked for are in the civil law area, and we do not provide this information." *Id.* at 10. The note also informed

---

[1] George pleaded guilty to the offense for which he is currently incarcerated on June 27, 2016. *See* Case No. CT-160125X (Cir. Court Prince George's Cty.) http://casesearch.courts.state.md.us/casesearch/processDisclaimer.jis.

2

George that staff does not provide copies from books, and suggested that George obtain the information requested from his attorney.[2] *Id.*

George sent another request for case law on February 19, 2016. ECF No. 14-1 at 1. On February 23, 2016, "Law Library Staff" indicated that entire citations to cases were needed before they could provide the requested copy work. *Id.* at 9. A second request on February 26, 2016, received on March 2, 2016, elicited a response from Law Library staff indicating that George had provided insufficient information for them to find the requested cases, that his second request that week exceeded the ten case limit, and that one case was unrelated to George's criminal case, and thus presumably would not be provided. *Id.* at 8.

On March 7, 2016, George again complained that he did not receive all the cases he requested. ECF No. 14-1 at 2. On March 10, 2016, Law Library Staff notified George that they had provided five of the ten items requested, but did not include the remaining copies because the subject matter was not relevant, or could not be found with the citation provided. *Id.* at 6. On April 25, 2016, George again requested copies of case law. *Id.* at 3.

Two days later, on April 27, 2016, George complained that he had received nothing, despite three requests spanning three weeks. ECF No. 14-1 at 4. That same day, April 27, 2016, Law Library Staff informed George that the cases requested related to use of excessive force during arrest, a civil matter, and thus were not related to his current criminal case. *Id.* at 7. Staff noted that the library "only provide[s] Maryland criminal legal information related to your current case," and that if George could explain how the material related to his current criminal case, it would be provided. *Id.* On June 9, 2016, George requested copies of the Civil Rights Act,

---

[2] A notation on the bottom of the note, apparently made by George, states that the information requested pertained to a § 1983 civil rights form. *Id.* at 10.

3

42 U.S.C. § 1983, several cases, and a copy of his court print-out. *Id.* at 5. The outcome of this request is not noted in the record.

### B. Access to Grievance Forms

On February 29, 2016, George requested a grievance form. ECF No. 14-1 at 13. On March 9, 2016, Major Gamble responded that the first step in the grievance process is informal resolution, speaking with the housing unit officer or zone commander to discuss the problem, before requesting an Inmate Grievance Form. *Id.* The record does not indicate whether George filed additional formal requests for grievance forms prior to the time he began his hunger strike in April of 2016.

### C. Placement in Unclean Cell, Deprivation of Resources

In his Complaint, George states he was stripped of clothing and possessions, including his drinking cup, and placed in a dirty cell after he initiated a hunger strike. ECF No. 1 at 4. His exhibits show that on April 11, 2016, Dr. Hernandez ordered George's placement on medical isolation in the special management housing area because he was on a hunger strike. ECF No. 14-1 at 11. That same day, George filed a grievance, expressing displeasure at being placed on suicide watch after initiating a hunger strike and complaining that he was being fed peanut butter three times a day with no fruit. ECF No. 12-1 at 1. He also stated that he was unfairly banned from the law library and denied the case copies he requested and access to books. ECF No. 12-1 at 1; ECF No. 14-1 at 12. Zone Commander Sgt. Godson investigated the grievance, and on April 11, 2016, Sgt. Godson indicated that 1) the food was nutritionally adequate, 2) policy dictated a detainee on a hunger strike be placed on medical isolation, and 3) the library would forward requested materials to him. ECF No. 14-1 at 12. The shift commander concurred with

4

the findings on April 12, 2016, and on April 14, 2016, a Lieutenant determined that the grievance lacked merit. *Id.*

### D. Procedural History

George filed the instant Complaint on May 5, 2016. ECF No. 1. Defendants McDonough and McTernan filed a Motion to Dismiss, or Alternatively, a Motion for Summary Judgment. ECF No. 12. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), George was notified of Defendants' Motion, and of his right to file an opposition. ECF No. 13. George responded by filing a Motion to Amend Complaint, stating that he received a grievance for the day he began his hunger strike, and that Dr. Hernandez was aware of the condition of the cell and George's lack of a drinking cup. ECF No. 14. In that Motion, George also states that he "reached out to the Major and Ms. McDonough on more than one occasion," *id.* at 1, and provides 14 pages of exhibits showing his requests for case copies, his grievance form dated April 11, 2016, and a civil case George initiated in the District Court of Maryland for Prince George's County against Warden McDonough.[3] ECF No. 14; ECF No. 14-1. The Motion to Amend shall be construed as George's Opposition to Defendant's Motion.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss, or in the alternative, for summary judgment. ECF No. 12. Ordinarily, a court cannot consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to

---

[3] On May 2, 2016, George filed a civil contract action in State court seeking $30,000.00 against McDonough, McTernan and Hernandez. The case remains pending. *See George v. McDonough*, Civil Case No. 050200011756201 6 Co. Ct. Prince George's Cty. The parties do not explain what connection, if any, the contract action might have with this federal civil rights matter.

5

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials"). It is appropriate here to consider the extraneous materials submitted by Defendants, and Plaintiff had notice by virtue of the motion being filed in the alternative as a motion for summary judgment. *See Warner v. Quilo*, No. ELH–12–248, 2012 WL 3065358, at *2 (D. Md. July 26, 2012) ("When the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur . . .") (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998)). Moreover, Plaintiff has also attached extraneous materials to his Motion to Amend, ECF No. 14, which the Court has considered. Accordingly, Defendants' motion will be construed as one for summary judgment.

Summary judgment is appropriate under Fed. R. Civ. P. 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the

evidence presented." *Id.* at 252. In undertaking this inquiry, the Court must view the facts and draw reasonable inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

Finally, a federal court must liberally construe pleadings filed by self-represented litigants to allow them fully to develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This Court reviews the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, particularly when that party is self-represented, as here. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). While the Court generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," it may nevertheless dismiss complaints that lack a cognizable legal theory or fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Turner v. Kight*, 192 F. Supp. 2d 391, 398 (D. Md. 2002).

### III. ANALYSIS

#### A. Access to Library and Grievance Forms

George's primary claim is that he was not provided full access to the PGCDC law library. ECF No. 1 at 4. Despite his confinement, George retains a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to

7

> attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). "[A] prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399 (Souter, J., concurring in part, dissenting in part, concurring judgment); *see also Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002) ("[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope."). Additionally, while Plaintiff, as a pre-trial detainee, was entitled to meaningful access to the courts, "the State satisfies this obligation where a pretrial detainee is provided professional legal assistance." *Toomer v. Crowder*, No. CIV.A. DKC-11-1752, 2011 WL 5842628, at *1 (D. Md. Nov. 18, 2011) (citing *United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir. 1978)).

Here, George's exhibits demonstrate that although he was not permitted to enter the library, he was provided copies of relevant criminal law if he was able to provide sufficient citation to assist library staff in locating the requested cases. ECF No. 14-1 at 7. Although George complains that civil case law concerning matters not directly related to his pending criminal case was not provided, this broader range of library services was not constitutionally required and provides no basis for damages. *See, e.g., Kelly v. Stouffer*, No. CIV.A AW-10-770, 2010 WL 3938343, at *4 (D. Md. Oct. 6, 2010) (no constitutional violation where there was no

law library at plaintiff's current prison facility, but inmates were afforded weekly library visits and individual library passes).

Further, George, who was represented by counsel in his criminal case, cannot prevail on his access-to-courts claim against McDonough, McTernan, or her staff because he cannot show "'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). Indeed, actual injury is not alleged, much less shown, in this case.[4] *See, e.g., Roberts v. Shearin*, No. CV RDB-13-1528, 2016 WL 3044848, at *4 (D. Md. May 27, 2016) (finding no right-to-access claim where prisoner did not demonstrate any injury to nonfrivolous legal claims); *Young-Bey v. Kennedy*, No. CIV.A. JFM-12-0162, 2013 WL 1976004, at *4 (D. Md. May 10, 2013) (finding no right-to-access claim where prisoner's claim of actual injury was "vague and conclusory").

George also complains that he could not obtain grievance forms, a form of an access-to-courts claim. ECF No. 1 at 4. *See, e.g., Tarpley v. Stouffer*, No. CIV.A. GLR-13-522, 2014 WL 768838, at *6 (D. Md. Feb. 21, 2014). George's exhibits show that he was told to present his grievances informally, and that he was provided a grievance form at the time of his placement on the special housing tier. ECF No. 14-1. George does not specify that any of the named Defendants were responsible for denying or delaying access to grievance forms, and he fails to specify actual harm resulting from such actions. ECF No. 1 at 2, 4. *See Tarpley*, 2014 WL 768838, at *6 (denying access-to-courts claim where plaintiff did not show actual injury and there was "no evidence submitted by Plaintiff to support the bald assertion that a timely filed

---

[4] George does not indicate that Defendant Hernandez was in any way involved in his failed quest to obtain copies of legal materials, or that she played any role in the alleged denial of grievance forms. Thus, even had Hernandez been served with the Complaint, she would be entitled to dismissal from the access-to-courts and denial of grievance forms allegations under 28 U.S.C. § 1915A, authorizing this Court to screen prisoner complaints.

grievance was intentionally misdirected or ignored"). Indeed, once filed, George's grievance was processed by a chain of command and ultimately found to be without merit. ECF No. 14-1 at 12.

### B. Placement in Unclean Cell, Deprivation of Resources

Finally, George does not allege action on the part of Defendants McDonough or McTernan concerning his placement in a dirty, special-housing medical cell, and the resultant taking of his clothing, personal property, and drinking cup. ECF No. 1 at 4; ECF No. 14-1 at 11. Exhibits submitted by the Plaintiff seem to indicate that Dr. Hernandez, who has not been served with process in this case, placed him in the cell, *see* ECF No. 14-1 at 11. But the allegations in the Complaint do not specify that it was Dr. Hernandez who made this decision, or that Dr. Hernandez knew of the complaints that allegedly motivated the transfer, or of the cell's condition, his loss of possessions, and his inability to obtain drinking water in the cell. ECF No. 1 at 1, 4. Thus, George shall be provided 21 days to amend his Complaint against Hernandez to provide a specific factual basis for his claim, or risk dismissal of his claim against Hernandez without prejudice and without further warning.

## IV. CONCLUSION

George has failed to establish a violation of constitutional rights by Defendants McDonough and McTernan. A separate Order shall be entered granting McDonough and McTernan's summary judgment motion and providing George an opportunity to amend his Complaint with regard to Defendant Hernandez.

8/17/2017
Date

GEORGE J. HAZEL
United States District Judge